UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division - Detroit

|  |  |  |
|---|---|---|
| LITTLE CAESAR ENTERPRISES, INC., a Michigan Corporation, and | ) ) ) ) | |
| LC TRADEMARKS, INC., a Michigan Corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. _____ |
| FEKADU, INC., an Ohio Corporation, and | ) ) ) ) | |
| SENAYT FEKADU, a resident of Ohio, | ) ) ) ) | |
| Defendants. | ) ) | |

## **COMPLAINT**

Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (collectively, "Little Caesar") bring this action for breach of contract, trademark infringement, unfair competition, and trade dress infringement arising from, among other things, Defendants', Fekadu, Inc. and Senayt Fekadu, failure to comply with Little Caesar's financial reporting and documentation requirements and for failing to adhere to Little Caesar's standards for health, safety, and sanitation. Despite having been given multiple opportunities and significant time to cure these

defaults, Defendants failed to do so.  Plaintiffs have terminated Defendants' Franchise Agreement based on their refusal to cure these defaults and Defendants' continued use and enjoyment of the Little Caesar trademarks, trade name, and trade dress outside the scope of the Franchise Agreement is a violation of the Lanham Act, 15 U.S.C. §§ 1114 *et seq*.  Plaintiffs seek injunctive, monetary, and other relief against Defendants for the reasons set forth below.

## THE PARTIES

1. Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan.  It is engaged in the business of franchising independent businesspersons to operate Little Caesars restaurants throughout the United States.  Little Caesar franchisees are licensed to use the trade names, service marks, and trademarks of Little Caesar and to operate under the Little Caesars System, which involves the production, merchandising, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2. Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan.  LC Trademarks, Inc. is the owner of the trademark, service mark, and trade name "Little Caesars," and related marks.

It licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to Little Caesar franchisees.

3. Defendant Fekadu, Inc. is an Ohio corporation with its principal place of business in the State of Ohio. Defendant Fekadu, Inc. was the owner and operator of a Little Caesars restaurant located at 11311 Buckeye Road, Cleveland, Ohio ("Defendants' Restaurant) pursuant to a Franchise Agreement with an effective date of January 25, 2007 (the "Franchise Agreement").

4. Upon information and belief, Defendant Senayt Fekadu is a citizen and resident of the State of Ohio. Defendant Senayt Fekadu is the sole officer and shareholder of Fekadu, Inc. pursuant to an Agreement and Consent to Change of Ownership Agreement dated July 1, 2012. Defendant Senayt Fekadu signed the initial Franchise Agreement and the Agreement and Consent to Change of Ownership Agreement and personally guaranteed Defendant Fekadu, Inc.'s obligations under the Franchise Agreement pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a).

6. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district and the events giving rise to Plaintiffs' claims

3

occurred in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

8. Venue is also proper pursuant to the forum selection clause in the Franchise Agreement between the parties, which permits Little Caesar to bring this action in this district, where its principal place of business is located.

## BACKGROUND FACTS

### Little Caesar

9. Little Caesar is the franchisor of the Little Caesars franchise system.

10. LC Trademarks, Inc. owns numerous federal registrations for the mark "Little Caesars" and related marks. Among those registrations are Registration Nos. 842,596; 2,036,763; 842,595; 2,028,607; 2,259,637 and others. Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

11. Little Caesar has the exclusive license to use and license others to use its marks and trade name and has used them at all times relevant to this action to identify its restaurants and the pizza and other products associated with those restaurants.

12. The trade dress of Little Caesars restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and décor (including, without limitation, menu boards, display racks, and servers' uniforms)

that are featured at the restaurants operated by Little Caesar franchisees.

13. The Little Caesars trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

14. The Little Caesars trademarks and trade dress are utilized in interstate commerce.

### Rights and Obligations Under the Franchise Agreement

15. Defendants were formerly licensed to use the Little Caesars trademarks, trade name, and trade dress in accordance with the terms of the Franchise Agreement.

16. Little Caesar provides each of its franchisees with a set of manuals and guidelines (collectively, the "Manuals"), which set forth in detail the procedures, methodology, and standards applicable to the operation of a Little Caesars restaurant.

17. Taken together, the Manuals provide detailed and specific guidance and standards regarding the operation of a Little Caesars franchise.

18. The Franchise Agreement executed by Defendants contains acknowledgments and agreements by Defendants concerning the importance of maintaining Little Caesar's standards and specifications regarding operations, among others. For example, the relevant parts of the applicable paragraphs of the

5

Franchise Agreement include:

    a. **5.1. Importance of Compliance with System Standards.** Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations.

    b. **5.3. Conformance to System Standards.** To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such standards, specifications, and procedures without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System.

    c. **5.5. Maintenance of Restaurant Premises.** Franchisee shall maintain the Restaurant premises (including adjacent public areas) in a clean, orderly condition and in excellent repair[.]

    d. **11.3. Maintenance of Records.** Franchisee shall prepare, during the term of this Agreement, and shall preserve for at least three (3) years from the dates of their preparation, complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Little Caesar from time to time in the Manuals or otherwise in writing.

19.     Defendants agreed that under the Franchise Agreement, they were required to submit financial statements and tax records to Little Caesar in the time prescribed in the Franchise Agreement. (*Id.* § 11.4.)

20. In addition, Defendants were to submit periodic reports, which include, but are not limited to, weekly reports of Gross Sales; a quarterly statement of all revenue and expense activity, and other data and information regarding the operation of the franchise as well as provide sales reports and cash register receipts for examining and copying by Little Caesar or its designated agents for the purposes of conducting an audit of the franchise. (*Id.* §§ 11.5, 11.6, 11.7.)

21. Under the Franchise Agreement, Defendants' agreed that maintaining false books or records, or submitting any false reports to Little Caesar is a breach of the Franchise Agreement and grounds for immediate termination without the right to cure. (*Id.* § 13.2.8.)

22. Failure to "permit Little Caesar to inspect Franchisee's Restaurant, books, records, and other documents" constitutes a noncurable default under Section 13.2.19 of the Franchise Agreement, which Defendants agreed to when they signed the Franchise Agreement.

23. With some exceptions, a thirty (30) day cure period applies to the violation of Little Caesar's health, safety, or sanitation standards. (*Id.* § 13.3.) The Franchise Agreement further provides that a twenty-four (24) hour cure period applies to defaults that present a health or safety hazard to Restaurant employees or customers. (*Id.* § 13.2.20.)

7

24. Defendants agreed that the failure to cure the defaults within the time provided would constitute grounds to terminate the Franchise Agreement. (*See id.* §§ 13.2.20, 13.3.)

25. The Franchise Agreement also affords Little Caesar the right to terminate without opportunity to cure based on Defendants' willful or repeated failure to meet any requirements or specifications related to product quality, the physical property, conditions of the equipment or materials used, and the products produced, among other failures. (*Id.* § 13.2.14.)

26. And Defendants agreed that Little Caesar has the right to terminate the Franchise Agreement without any opportunity to cure if they committed three (3) defaults (whether or not cured after notice) within a twelve (12) month period. (*Id.* § 13.2.10.)

27. It is a default to make any material misrepresentations in connection with the operation of Defendants' Restaurant. (*Id.* § 13.2.12.)

28. Defendants agreed, under the Franchise Agreement, that a failure to comply with all federal, state, and local laws, rules, and regulations, including the taxing authorities, is a breach of the Franchise Agreement and is a noncurable default. (*Id.* § 5.13.)

29. Defendants also covenanted to devote their full time and best efforts to the management and operations of Defendants' Restaurant. (*Id.* § 15.1.)

30. Defendants agreed that, during the term of the Franchise Agreement and after termination, they would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in its proprietary marks. (*Id.* § 7.3.2.)

31. Defendants also covenanted not to "do or perform any act injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the Little Caesars System. (*Id.* § 15.2.1.)

32. Under the terms of the Franchise Agreement, Defendants agreed that their right to use Little Caesar's Proprietary Marks was limited to the terms of the Franchise Agreement, and that "any unauthorized use thereof shall constitute an infringement." (Franchise Agreement, § 7.2.5.)

33. Defendants agreed that they would use Little Caesar's Proprietary Marks, including, but not limited to, its trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id*. § 7.2.1.)

34. Defendants were permitted to use the Little Caesars proprietary marks only in accordance with the Little Caesars System, standards, and specifications, which "underlie the goodwill associated with and symbolized by the [p]roprietary [m]arks." (*Id.* § 7.1.3.)

35. Defendant Senayt Fekadu personally guaranteed the obligations of Defendant Fekadu, Inc. As guarantor, she has financially benefited from the

9

economic activity of Fekadu, Inc. and is jointly and severally liable for the acts set forth in the paragraphs below.

## Post-Termination Obligations

36. Defendants agreed that in the event that the Franchise Agreement was terminated, they would "immediately cease to operate" the restaurant and would not thereafter, directly or indirectly, "represent to the public or hold [themselves] out as a present or former franchisee of Little Caesar." (*Id*. § 14.1.)

37. In addition, Defendants agreed that they would immediately and permanently cease to use, in any manner whatsoever, any products, ingredients, trade secrets, confidential methods, procedures, and techniques associated with the Little Caesars System and/or its Proprietary Marks. (*Id*. § 14.2.)

38. They also agreed to return all confidential manuals and other confidential information of Little Caesar. (*Id*. § 14.8.)

39. Defendants agreed that upon termination or expiration they would not use "any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar." (*Id.* § 14.5.)

40. Defendants agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains the Little Caesar proprietary

marks, and to furnish evidence of compliance within thirty (30) days after the termination or expiration of the Franchise Agreement. (*Id.* § 14.3.)

41. Under the Franchise Agreement, Defendants agreed that upon termination Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of the restaurant. In addition, Defendants agreed to assign to Little Caesar, at its request, any interests they have in any leases for the restaurant premises. (*Id.* §§ 14.9, 14.4.)

42. Defendants agreed to a reasonable post-termination covenant against competition, which states that they may not, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one (1) year following the termination of the Agreement (or a final court order regarding the same), in any Designated Market Area of any Little Caesar restaurant, and for a continuous uninterrupted period of two (2) years following the termination of the Agreement (or a final court order regarding the same), in the Designated Market Area in which Defendants' former Little Caesar restaurant is located. (*Id.* § 15.3.)

11

And that breaching this and any other covenants to the Franchise Agreement, would cause Little Caesar irreparable injury "which no adequate remedy at law may be available, and agree[d] to pay all court costs and reasonable attorneys' fees incurred by Little Caesar." (*Id.* § 15.4.)

43. Defendants further agreed they would pay to Little Caesar all sums owing, including damages, liquidated damages, costs and expenses, and reasonable attorneys' fees incurred by reason of any default or termination of the Franchise Agreement and in enforcing Defendants' obligations upon termination. (*Id*. § 13.5, 14.7.)

## **Defendants' Defaults of the Franchise Agreement**

44. Pursuant to the applicable provisions of the Franchise Agreement, Defendants were required to provide Little Caesar with financial documents in the forms and manner required and to adhere to Little Caesar's standards for health, safety, and sanitation.

45. By letter dated December 16, 2014, Defendants received a Notice of Default and Notice to Cure, which specifically identified missing records, including financial statements for 2013 and the first, second, and third quarters in 2014; bank statements for August – November 2013 and January – April 2014; tax returns for 2012 and 2013; and a copy of the current insurance certificate for the franchise.

12

46. Defendants again breached their financial reporting obligations by failing to provide financial data, information, and records on the forms and in the manner required by Little Caesar for Little Caesar's review and audit, including the 2015 first and second quarter financial records and financial statements. Without providing these records, on the forms and in the manner required, Defendants have prevented Little Caesar from auditing their franchise in violation of the Franchise Agreement.

47. Within the last twelve (12) months, Defendants restaurant has been inspected several times by a Little Caesar representative. Inspections conducted on March 9, 2015, June 2, 2015, June 26, 2015, and August 26, 2015 revealed that Defendants were in breach of their Franchise Agreement. During the inspections, numerous violations were identified related to health, sanitation, and safety, in addition to other operational violations that were damaging to Little Caesar's reputation and goodwill. These violations included, but were not limited to, pest infestation, generally unsanitary conditions and equipment throughout the restaurant, lack of temperature controls for food products, undated and expired food products, unsafe food handling practices, lack of compliance with food quality standards, and other operational violations.

48. Defendants received a copy of the Peak Performance Reviews completed during these inspections that noted, by category, each violation and also provided comments that further explained many of the violations.

49. By letters dated June 11, 2015 and July 13, 2015, Defendants were again notified that they were out of compliance with the Franchise Agreement because of their operational defaults. By letter dated September 18, 2015, Defendants received a Notice of Default and Notice to Cure which listed the violations observed on August 26, 2015.

## Termination of Defendants' Franchise Agreements

50. Defendants' acts constitute breaches of the Franchise Agreement that are grounds for immediate termination. Accordingly, pursuant to an October 2, 2015 Notice of Franchise Agreement Termination, Little Caesar terminated Defendants' Franchise Agreement.

51. As part of its Notice of Franchise Agreement Termination, Little Caesar demanded that Defendants immediately cease using its proprietary marks and comply with the Franchise Agreement's post-termination obligations. To date, Defendants have refused to comply with the Notice of Franchise Agreement Termination and their post-termination obligations under the Franchise Agreement.

52. Defendants' actions have caused and continue to cause monetary damage and irreparable harm to Little Caesar, including harm to Little Caesar's reputation and goodwill.

## COUNT I
## Breach of Contract

53. The allegations of paragraphs 1 through 52 are hereby incorporated by reference.

54. The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreement cited herein.

55. Defendants' breaches constitute grounds for terminating the Franchise Agreement.

56. As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II
## Trademark Infringement

57. The allegations of paragraphs 1 through 56 are hereby incorporated by reference.

58. The use in commerce of Little Caesar's trademarks and trade names by the Defendants outside the scope of the Franchise Agreement and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary

to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar. Such unauthorized use of Little Caesar's trademarks and trade names infringes its exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

59. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

60. As a direct and proximate result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## Unfair Competition

61. The allegations of paragraphs 1 through 60 are hereby incorporated by reference.

62. The use in commerce of Little Caesar's trademarks, trade names and trade dress by Defendants outside the scope of the Franchise Agreement and without the consent of Little Caesar is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

63. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

64. As a direct and proximate result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
### Trade Dress Infringement

65. The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66. Defendants' restaurant is identified by signs, exterior appearance, packaging, containers, and other items on which the Little Caesar Proprietary Marks appear in the same distinctive style and color scheme as Little Caesar uses for the pizza restaurants operated by Little Caesar licensees.

67. Defendants' use of trade dress that is identical or confusingly similar to the Little Caesar trade dress outside the scope of the Franchise Agreement constitutes a false designation of the origin of Defendants' restaurant, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their restaurant with the Little Caesar restaurants operated by Little Caesar licensees. Such adoption of Little Caesar's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

68. Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

69. As a result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Little Caesar prays that this Court:

A. Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreement;

B. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement as of the effective date of Little Caesar's Notice of Franchise Agreement Termination, or as otherwise provided by applicable law;

C. Enter an order enjoining Defendants, and all those acting by, through, or in concert with them, by preliminary and permanent injunction, from using the Little Caesars trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Plaintiffs;

D. Enter an injunctive order directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable post-termination obligations as provided in the Franchise Agreement, including, but not limited to, promptly paying all sums owed to Little Caesar, complying with any

request from Plaintiffs to purchase any equipment or other assets of the franchise, and taking all steps to transfer their leasehold interests in the franchise to Plaintiffs or their designee in the event that Plaintiffs elect to exercise any rights they or any of their affiliates or subsidiaries might have in such interests;

E. Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F. Enter judgment in favor of Plaintiffs for the damages, including, but not limited to, liquidated damages, they have suffered as a result of Defendants' conduct, plus prejudgment interest allowed by law;

G. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreement and Section 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

H. Award Plaintiffs such other relief in Plaintiffs' favor as this Court may deem just and proper.

        Respectfully submitted,

        <u>s/Larry J. Saylor</u>
        Larry J. Saylor (P28165)
        Kimberly A. Berger (P56165)
        MILLER, CANFIELD, PADDOCK
          & STONE P.L.C.
        150 West Jefferson Avenue, Suite 2500
        Detroit, MI 48226
        Telephone: (313) 496-7986
        Facsimile: (313) 496-8454
        Saylor@millercanfield.com
        Berger@millercanfield.com

        Robert L. Zisk (admitted)
        Stephen J. Vaughan (admitted)
        GRAY, PLANT, MOOTY, MOOTY
          & BENNETT, P.A.
        The Watergate – Suite 700
        600 New Hampshire Avenue, N.W.
        Washington, DC 20037
        Telephone: (202) 295-2200
        Facsimile: (202) 295-2250
        robert.zisk@gpmlaw.com
        stephen.vaughan@gpmlaw.com

Dated: October 5, 2015        *Attorneys for Plaintiffs*